**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KESIA NDAPEWOSHALI KUNAMWENE | |
| Plaintiff, | Case No. 1:19-cv-1957 |
| v. | |
| ESTHER MUTUTONDE-KAMUTOOLE MWOOMBOLA and EDISON MWOOMBOLA 1859 Plymouth Street NW Washington DC, 20012, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff, Kesia Ndapewoshali Kunamwene (hereinafter "Ms. Kunamwene"), brings this action against Edison Mwoombola (hereinafter "Mr. Mwoombola") and Esther Mwoombola (hereinafter "Mrs. Mwoombola") (collectively the "Mwoombolas"), to seek relief under various federal and local laws.

As further alleged below, Ms. Kunamwene was trafficked for forced labor into the United States by the Mwoombolas. The Mwoombolas lured Ms. Kunamwene into the United States with promises of reasonable pay that would allow Ms. Kunamwene to support her three children in Namibia. Instead, upon arrival into the United States, the Mwoombolas effectively forced Ms. Kunamwene to work for a fraction of what was promised to her and confined Ms. Kunamwene to these conditions by confiscating her passport, all in violation of contract, fraud, and trafficking laws.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 29 U.S.C. §§ 201 *et seq.*, and the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPA"), 18 U.S.C. § 1595(a)).

2.      This Court has supplemental jurisdiction over Ms. Kunamwene's state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (d) because a substantial part of the events giving rise to the claims occurred in this district, and the Defendants are citizens of a foreign state.

## PARTIES

4.      Plaintiff Kesia Ndapewoshali Kunamwene is a 36-year-old citizen of Namibia, currently residing in the District of Columbia.  At the time of the events that gave rise to this Complaint, Ms. Kunamwene was legally residing in the United States, which had been arranged by the Defendants.

5.      At all relevant times, Defendant Mrs. Mwoombola was employed in Washington, D.C., working as First Secretary of Economic, Social and Consular Affairs at the Embassy of the Republic of Namibia, 1605 New Hampshire Ave, N.W. Washington DC 20009.

6.      When the Defendants first brought Ms. Kunamwene to the United States in 2007, the Mwoombolas lived with their two children in a house located at 1859 Plymouth Street, NW, Washington DC, 20012.  The house was provided by the Namibian government.

## FACTUAL ALLEGATIONS

### I.      Ms. Kunamwene's Relationship with the Defendants in Namibia

7.      Ms. Kunamwene is from a village in northern Namibia, near the Angolan border.

8.     At the time she was trafficked to the United States, Ms. Kunamwene's English skills were limited.

9.     Ms. Kunamwene's mother and father are deceased.  She has a brother, sister, and three children ages approximately 18, 15, and 8.  She has completed the equivalent of a ninth-grade education.

10.     In or about January 2014, Mr. Mwoombola, who is related to Ms. Kunamwene's mother's family, contacted Ms. Kunamwene's family with a job offer for Ms. Kunamwene to work as a domestic worker and act as a nanny for the Mwoombolas and their two children in Windhoek, Namibia.

11.     Ms. Kunamwene and her family accepted this job.

12.     When working for the Mwoombolas in Windhoek, Ms. Kunamwene cared for the Mwoombolas' two children while cooking and cleaning for the family.

13.     Ms. Kunamwene lived with the Mwoombolas in their home and generally worked from approximately 7:00 am until 9:00 p.m. without any scheduled breaks or time off.

14.     Ms. Kunamwene's only breaks were when the children were not home and all the household chores were complete, or when the family was on holiday.

15.     Ms. Kunamwene did not have a written contract for this job and she did not receive the opportunity to negotiate any terms of the employment.

16.     Ms. Kunamwene was paid a wage of 1,300 Namibian dollars per month, the equivalent of approximately $90 USD.

## II.     The Defendants Deceived Ms. Kunamwene to Work for Them in the United States

17.     In September 2017, Mrs. Mwoombola accepted a job in Washington, D.C. at the Embassy of the Republic of Namibia.

3

18.   Mrs. Mwoombola offered Ms. Kunamwene a job working for her as a domestic worker and to act as a nanny to their two children in the United States.

19.   Mrs. Mwoombola drafted an employment contract for Ms. Kunamwene to sign.

20.   The employment contract had several material terms, including Ms. Kunamwene's set wage of $2,000 USD per month plus overtime as required by U.S. federal and local laws.

21.   A work day, as specified in the contract, was intended to be between 7 a.m. and 3 p.m., Monday to Friday.

22.   The contract also stated that the employee's passport and visa will remain in the sole possession of the employee.

23.   A true and correct copy of this employment contract is attached as Exhibit 1.

24.   After Ms. Kunamwene was offered this job, she travelled to her village with the Mwoombolas to consult with her extended family.

25.   There, Mr. Mwoombola advised the family that Ms. Kunamwene would be paid $2,000 USD per month, as stated in the contract.

26.   Based upon this representation, Ms. Kunamwene and her family agreed that she should accept the position in order to support her family.

27.   The contract was written in English and Ms. Kunamwene was unable to read the contract.  Thus, Ms. Kunamwene's understanding of the contract came only from the Mwoombolas' representation of the contract terms and only the terms concerning Ms. Kunamwene's wage were communicated.

28.   Based on the Mwoombolas' representation that she would be paid $2,000 USD per month, Ms. Kunamwene signed the employment contract on July 27, 2017.

29.   The contract became effective on October 1, 2017.

30.     Ms. Kunamwene was provided with a copy of the employment contract in English only, which is not Ms. Kunamwene's first language.

**III.**     **The Defendants Confiscated Ms. Kunamwene's Passport and Subjected Her to Unreasonably Long Work Days**

31.     In September 2017, Ms. Mwoombola arranged for Ms. Kunamwene to obtain a Namibian passport.

32.     Ms. Kunamwene's passport was issued in her own name, but Ms. Mwoombola retained possession of it at all relevant times.

33.     Ms. Mwoombola also scheduled a consular interview for Ms. Kunamwene at the U.S. Embassy in Windhoek, Namibia so that Ms. Kunamwene could obtain an A1 Domestic Help visa to travel to the United States.

34.     Mrs. Mwoombola provided Ms. Kunamwene with her Namibian passport for the consular interview, but confiscated it after the interview.

35.     On September 28, 2017, Ms. Kunamwene arrived in the United States (Washington, D.C. area) with Mrs. Mwoombola and her two children. [1] Ms. Mwoombola instructed Ms. Kunamwene to pack lightly for the trip.

36.     Although her employment contract did not begin until October 1, 2017, Ms. Kunamwene cared for the Mwoombolas' children from the time they departed Namibia on September 27, 2017 through October 1, 2017.

37.     Mrs. Mwoombola provided Ms. Kunamwene with her passport and visa for the journey to the United States, but confiscated it when they reached the Mwoombolas' residence in Washington, D.C., contrary to the provisions of the contract.

---

[1] Mr. Mwoombola did not reside with the family in Washington, D.C. full time, but visited frequently from Namibia.

38.     Upon arrival, the Mwoombolas and Ms. Kunamwene were picked up by a private car at the airport and taken to the Plymouth Street NW residence in Washington D.C. provided by the Namibian government.

39.     Once in the United States, Ms. Kunamwene generally woke around 6 a.m. to prepare breakfast for the family.

40.     After breakfast, she would perform her daily duties, which included making meals for the children, dropping and picking up the older child at the bus stop before and after school, taking the younger child to gym classes, cooking for the entire family, and cleaning the house.

41.     From September 28, 2017 to December 28, 2017, Ms. Kunamwene typically worked every day, from 6 a.m. until 9 p.m., a total of 15 hours a day, with no scheduled breaks, a longer day than her typical day working for the Mwoombolas in Namibia.  Ms. Kunamwene's only chance to rest was when she was eating.

42.     On October 20, 2017, Mrs. Mwoombola took Ms. Kunamwene to a local Bank of America branch and opened an account solely in her name (the "Bank Account").

43.     Mrs. Mwoombola brought Ms. Kunamwene's passport to the bank to open the account and retained custody of it when the visit was complete.

44.     At all relevant times until Ms. Kunamwene's U.S. Department of State ("State Department") interview in December 2017, Mrs. Mwoombola retained possession of Ms. Kunamwene's passport and only allowed her access to it during government meetings and banking transactions.

IV.     **The Defendants Refused to Pay Ms. Kunamwene Her Promised Wages**

45.     On October 30, 2017, Mrs. Mwoombola paid Ms. Kunamwene $600 in cash for her services for the month of October, less than half the amount owed to Ms. Kunamwene under her employment contract.

46.     On that same day, Ms. Kunamwene deposited $500 into her Bank Account.

47.     Ms. Kunamwene used the remaining $100 to purchase clothing and personal items because she had packed lightly for her trip to the United States.

48.     On November 24, 2017, Ms. Kunamwene withdrew $100 from her Bank Account and asked Mrs. Mwoombola to wire it to her family back in Namibia.

49.     On November 27, 2017, Mrs. Mwoombola transferred $2,000 into Ms. Kunamwene's account for services rendered for the month of November.

50.     That same day or soon thereafter, Mrs. Mwoombola informed Ms. Kunamwene that her salary was in fact $600 rather than the $2,000 under her executed employment contract.

51.     A true and correct copy of Ms. Kunamwene's November 2017 bank statement reflecting this activity is attached as Exhibit 2.

52.     Mrs. Mwoombola instructed Ms. Kunamwene to withdraw $1,400 from the $2,000 deposited into her Bank Account and give this amount back to Mrs. Mwoombola in cash.

53.     Ms. Kunamwene told Mrs. Mwoombola that she never agreed to a $600 monthly salary and that the employment contract stated she would receive a $2,000 monthly salary in exchange for her labor.

54.     In response, Mrs. Mwoombola threatened to send Ms. Kunamwene back to Namibia if she did not accept the $600 per month wage.

55.     Ms. Kunamwene's family was dependent on her monthly salary. Knowing this, Ms. Kunamwene felt that she had no other option other than to continue working for the Mwoombolas at the reduced rate of $600 per month.

56.     Ms. Kunamwene told Mrs. Mwoombola that she did not want to be involved in any fraudulent activity and requested that only $600 be deposited into her account.

57.     Mrs. Mwoombola replied that she needed to deposit $2,000 to the Bank Account each month to give the appearance that Ms. Kunamwene was receiving the agreed-upon wage as outlined in the employment contract, and so that the State Department would believe Ms. Kunamwene was receiving $2,000 as a monthly salary rather than the $600.

58.     Upon information and belief, Mrs. Mwoombola made the payment to Ms. Kunamwene in this manner to conceal the fact that Ms. Kunamwene was receiving a drastically lower wage of $600 per month, and to make it appear as though she was receiving her agreed-to wage of $2,000 per month.

## V.     The Defendants' Threats and Mistreatment of Ms. Kunamwene

59.     On December 5, 2017, Ms. Kunamwene attended a check-in interview with the State Department, in accordance with the State Department's Domestic Worker Program.

60.     Mrs. Mwoombola gave Ms. Kunamwene her passport for this meeting.

61.     During the interview, a State Department official (the "Official") asked Ms. Kunamwene about the work she was performing for Mrs. Mwoombola.

62.     Ms. Kunamwene truthfully told the Official about her 15-hour work days and drastically reduced wages.

63.     During this interview, the Official reviewed with Ms. Kunamwene the terms her employment.

64.     It was at this meeting that Ms. Kunamwene learned that the contract provided specific parameters for a working day, and that she was working substantially more hours than her contract required.

65.     The Official also provided Ms. Kunamwene with contact information for the National Human Trafficking Hotline and requested that she return to the State Department for a follow-up interview in January 2018.

66.     Mrs. Mwoombola had, at all previous times, possessed Ms. Kunamwene's passport. After the State Department interview, Ms. Kunamwene retained possession of her passport and hid it between her bed and her mattress.

67.     After the interview, Ms. Kunamwene told Mrs. Mwoombola that she had truthfully told the Official about her reduced wages and 15-hour work days.

68.     Mrs. Mwoombola became angry and threatened to send Ms. Kunamwene back to Namibia.  Mrs. Mwoombola insulted Ms. Kunamwene, calling her "stupid."

69.     Mrs. Mwoombola told Ms. Kunamwene that she was ruining her reputation and that this could destroy the Mwoombola family.

70.     Ms. Kunamwene became scared and attempted to escape to her bedroom.

71.     Mrs. Mwoombola followed her and continued to verbally abuse her.

72.      Although Ms. Kunamwene was afraid that Mrs. Mwoombola would attempt to physically assault her, she was able to escape to her bedroom.

73.     After this interaction with Mrs. Mwoombola, Ms. Kunamwene feared for her safety.

74.     Following the State Department interview and the subsequent verbally abusive altercation with Mrs. Mwoombola, Ms. Kunamwene's situation worsened substantially.

75.     Mrs. Mwoombola gave Ms. Kunamwene more work than before.  For example, Ms. Kunamwene was instructed to hand-wash items that she previously could wash by machine.

76.     Ms. Kunamwene became increasingly more isolated.

77.     The Mwoombolas were angry at Ms. Kunamwene for being truthful in her interview with the State Department.

78.     When Mr. Mwoombola visited his family in the United States, he confronted Ms. Kunamwene about reporting the family to the State Department.

79.     Ms. Kunamwene was living in fear of what would happen next.

## VI.     Ms. Kunamwene Signs a Second Contract

80.     Shortly after the State Department interview, in December 2017, Mrs. Mwoombola told Ms. Kunamwene that the U.S. government would be checking the Bank Account.

81.     On or about December 7, 2017, Mrs. Mwoombola gave Ms. Kunamwene a new employment contract to sign.

82.     The new employment contract stated that Ms. Kunamwene's monthly salary would be $1,750.

83.     However, contrary to the terms of the employment contract, Mrs. Mwoombola told Ms. Kunamwene that she would in fact still only be paid $600 per month.  Mrs. Mwoombola intentionally and willfully failed and refused to pay Ms. Kunamwene the wages promised in her second contract.

84.     Mrs. Mwoombola told Ms. Kunamwene to sign the contract or risk trouble with the U.S. government.

85.     Because Ms. Kunamwene feared what Mrs. Mwoombola might do if she did not sign, Ms. Kunamwene signed the document, but Mrs. Mwoombola did not provide her with a copy of it.

86.     At some point later, Mrs. Mwoombola told Ms. Kunamwene that the State Department had not accepted the revised contract.

## VII.     Ms. Kunamwene Escapes from the Defendants' Control

87.     On or about December 26, 2017, Mr. and Mrs. Mwoombola bought Ms. Kunamwene a plane ticket and told her that she had to return to Namibia.

88.     The Mwoombolas threatened Ms. Kunamwene, stating they would cancel her visa and that she would be arrested if she remained in the United States without a visa.

89. Because Ms. Kunamwene had drastically altered her life to move to the United States to support her three children and her family in Namibia, and because the Mwoombolas had not paid her for work completed in October and December, Ms. Kunamwene attempted to stall her departure so she could call the National Human Trafficking Hotline.

90. Ms. Kunamwene secretly recorded the interaction between herself and Mrs. Mwoombola that took place on December 26, 2017.

91. A true and correct copy of Ms. Kunamwene's recorded conversation, which was translated by the U.S. Embassy in Namibia, is attached as Exhibit 3.

92. On December 28, 2017, Ms. Kunamwene called the National Human Trafficking Hotline and was subsequently removed from the Mwoombola home with the assistance of law enforcement.

93. Following Ms. Kunamwene's escape, Mrs. Mwoombola disconnected Ms. Kunamwene's cellphone service, but continued to send Ms. Kunamwene texts over WhatsApp.

94. Mrs. Mwoombola also contacted Ms. Kunamwene's cousin in Namibia to inquire about Ms. Kunamwene's whereabouts and warned the cousin that Ms. Kunamwene would be arrested without a valid visa in the United States.

95. On December 29, 2017, Mrs. Mwoombola threatened Ms. Kunamwene, texting her through WhatsApp, "I hope you know what you are doing."

96. Mrs. Mwoombola also placed strategic threats through Ms. Kunamwene's family, telling relatives that she would inform the State Department of Ms. Kunamwene's escape and urge U.S. officials to cancel her visa and place her under arrest.

97. A true and correct copy of the WhatsApp text exchanges is attached as Exhibit 4.

98. Ms. Kunamwene still fears for her life if she were to leave the United States.

99.     The Mwoombolas are powerful in Namibia and Ms. Kunamwene fears that if she returned to Namibia, the Mwoombolas would take violent action against her as revenge for reporting their actions to the State Department.

## FIRST CLAIM FOR RELIEF

**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1590, 1595 (Against Both Defendants)**

100.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

101.    By transporting Ms. Kunamwene to the United States under false pretenses and, upon arrival, confiscating her passport and subjecting her to involuntary servitude, forced labor, and enslavement, the Defendants engaged in trafficking of Ms. Kunamwene in violation of 18 U.S.C. § 1590.

102.    Plaintiff is permitted to bring a civil cause of action for violations of 18 U.S.C. § 1590 under 18 U.S.C. § 1595.

103.    As a direct and proximate result of the Defendants' actions, Ms. Kunamwene has sustained damages, including emotional distress and economic losses.

104.    Ms. Kunamwene is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## SECOND CLAIM FOR RELIEF

**Forced Labor Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1589 (Against Both Defendants)**

105.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

106.    The Defendants knowingly obtained Ms. Kunamwene's labor and services by patterns of threats of serious harm and threatened abuses of legal processes as described by the forced labor provisions of the Trafficking Victims Protection Act, 18 U.S.C. § 1589.

107.    Ms. Kunamwene brings these claims pursuant to the civil cause of action for victims of forced labor in 18 U.S.C. § 1595.

108.    As a direct and proximate result of Defendants' actions, Ms. Kunamwene has sustained damages, including economic loss and emotional distress.

109.    Ms. Kunamwene is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

### THIRD CLAIM FOR RELIEF
**Federal Minimum Wage**
**(Against Both Defendants)**

110.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

111.    The Defendants employed Ms. Kunamwene within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§ 203(d)-(e).

112.    From September 28, 2017 to December 28, 2017, Ms. Kunamwene typically worked from 6 a.m. until 9 p.m. every day, for a total of 15 hours per day with no scheduled breaks.

113.    Furthermore, Ms. Kunamwene was paid $600 for the entire month of November, and did not receive any wages for work done in October and December.

114.    The Defendants willfully failed to pay Ms. Kunamwene statutory minimum wages, in violation of 29 U.S.C. § 206(a) and regulations of the United States Department of Labor.

115.    At all times relevant hereto, the relationship between the Defendants and Ms. Kunamwene was one of private employer and employee.

116.    The Defendants' willful violation of the Fair Labor Standards Act entitles Ms. Kunamwene to recover her unpaid minimum wages, an equal amount as liquidated damages, and reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. §§ 206 and United States Department of Labor regulations, in addition to declaratory relief.

### FOURTH CLAIM FOR RELIEF
**Federal Overtime Wage Violation**
**(Against Both Defendants)**

117.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

118.    The Defendants employed Ms. Kunamwene within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§ 203(d)-(e).

119.    From September 28, 2017 to December 28, 2017, Ms. Kunamwene typically worked from 6 a.m. until 9 p.m. every day, for a total of 15 hours per day, and was paid $600 for the entire month of November and did not receive any wages for work done in October and December.

120.    The Defendants willfully failed to pay Ms. Kunamwene statutory overtime wages, in violation of 29 U.S.C. § 207(a) and regulations of the United States Department of Labor.

121.    At all times relevant hereto, the relationship between the Defendants and Ms. Kunamwene was one of private employer and employee.

122.    The Defendants' willful violation of the Fair Labor Standards Act entitles Ms. Kunamwene to recover her unpaid overtime wages, an equal amount as liquidated damages, and reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216 and United States Department of Labor regulations, in addition to declaratory relief.

**FIFTH CLAIM FOR RELIEF**
**District of Columbia Minimum Wage and Overtime Wage Violation**
**(Against Both Defendants)**

123.     Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

124.     The Defendants employed Ms. Kunamwene within the meaning of the Minimum Wage Revision Act, § 32-1002(1A).

125.     From September 28, 2017 to December 28, 2017, Ms. Kunamwene typically worked from 6 a.m. until 9 p.m. every day, for a total of 15 hours per day, with no scheduled breaks.  Furthermore, Ms. Kunamwene was paid $600 for the entire month of November, and did not receive any wages for work done in October and December.

126.     The Defendants willfully failed to pay Ms. Kunamwene statutory minimum wages and overtime wages, in violation of the Minimum Wage Revision Act, § 32-1003.

127.     At all times relevant hereto, the relationship between the Defendants and Ms. Kunamwene was one of private employer and employee.

128.     The Defendants' willful violation of the Minimum Wage Revision Act laws entitles Ms. Kunamwene to recover payment of back wages unlawfully withheld, liquidated damages equal to treble the amount of unpaid wages, statutory penalties, and reasonable attorneys' fees and costs of the action pursuant to § 32-1308, in addition to declaratory relief.

**SIXTH CLAIM FOR RELIEF**
**Fraud**
**(Against Defendant Mrs. Mwoombola)**

129.     Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

15

130.    Upon information and belief, Mrs. Mwoombola intentionally and knowingly misrepresented to Ms. Kunamwene the conditions of her employment in order to induce her to come to the United States.

131.    The pretense for this inducement was that, *inter alia*, Ms. Kunamwene would receive $2,000 per month for work performed, Monday to Friday.

132.    Ms. Kunamwene did in fact rely on Mrs. Mwoombola's misrepresentations to her detriment and, as a result, Ms. Kunamwene was forced to work as a domestic worker for the Defendants for $600 per month.

133.    As a consequence of Mrs. Mwoombola's actions, Ms. Kunamwene has suffered great economic and emotional harm.

134.    Upon information and belief, Mrs. Mwoombola made the foregoing misrepresentations with a conscious and deliberate disregard for the interests of others such that her conduct may be called willful or wanton.

135.    As a direct and proximate result of these actions, Ms. Kunamwene has sustained physical and economic damages.

136.    Plaintiff is therefore entitled to recover these damages in an amount to be proven at trial, including attorneys' fees.

### SEVENTH CLAIM FOR RELIEF
**Fraudulent Inducement**
**(Against Both Defendants)**

137.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

138.    Upon information and belief, Mrs. Mwoombola intentionally and knowingly misrepresented to Ms. Kunamwene the conditions of her employment and conditions in the United States in order to induce her to come to the United States,

16

139.     The pretense for this inducement was that, *inter alia*, Ms. Kunamwene would receive $2,000 per month and be subjected to reasonable working conditions.

140.     Upon information and belief, Mrs. Mwoombola made the above misrepresentations with the intention that Ms. Kunamwene would rely on them in order to entice her to come to the United States and to force her to work in their household.

141.     Ms. Kunamwene did in fact rely on Mrs. Mwoombola's misrepresentations to her detriment and, as a result, Ms. Kunamwene was forced to work 15 hours a day as a domestic worker for the Defendants for $600 per month, less than half the amount of compensation that was promised to her.

142.     Consequently, Ms. Kunamwene has suffered great economic and emotional harm.

143.     Upon information and belief, Mrs. Mwoombola never intended to follow through, and did not follow through, on her promises.   Mrs. Mwoombola did not intend to pay Ms. Kunamwene $2,000 per month.

144.     Instead, Mrs. Mwoombola planned to force, and did force, Ms. Kunamwene to work long hours, seven days a week, for her family for less than half the pay promised.

145.     Upon information and belief, at the time that Mrs. Mwoombola made the foregoing representations and promises to Ms. Kunamwene, she had no intention of meeting those representations and promises.

146.     Mrs. Mwoombola made the foregoing misrepresentations with a conscious and deliberate disregard for the interests of others such that her conduct may be called willful or wanton.

147.     At all times relevant hereto, the relationship between the Defendants and Ms. Kunamwene was one of private employer and employee.

148.    As a direct and proximate result of these actions, Ms. Kunamwene has sustained severe economic damages.

149.    Plaintiff is therefore entitled to recover these damages in an amount to be proven at trial, including attorneys' fees.

## EIGHTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Against Both Defendants)

150.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

151.    Ms. Kunamwene rendered services as a live-in domestic worker to the Defendants in good faith and with the expectation that she would be fairly compensated for such services under her employment contract.

152.    The Defendants accepted these services and in turn failed to compensate Ms. Kunamwene for her services.

153.    The Defendants have been unjustly enriched at Ms. Kunamwene's expense.

154.    At all times relevant hereto, the relationship between the Defendants and Ms. Kunamwene was one of private employer and employee.

155.    Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## NINTH CLAIM FOR RELIEF
### Breach of Contract I
### (Against Mrs. Mwoombola)

156.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

157.    Ms. Kunamwene and Mrs. Mwoombola entered into an employment agreement in July 2017, whereby Ms. Kunamwene agreed to work for the Defendants as a domestic worker and

Mrs. Mwoombola agreed to pay Ms. Kunamwene $2,000 per month for work done Monday to Friday.

158.    The contract also provided that Ms. Kunamwene would be paid overtime pay, in accordance with local and federal laws, as well as sole possession of her passport and visa.

159.    Under the first contract, Ms. Kunamwene worked for the Defendants from October 1, 2017 to December 7, 2017.

160.    Mrs. Mwoombola intentionally and willfully failed and refused to pay Ms. Kunamwene the wages promised in her contract.

161.    Ms. Kunamwene was not permitted to take days off—including weekend days— and was forced to work hours well in excess of a 40-hour workweek.

162.    Mrs. Mwoombola intentionally and willfully failed to pay overtime as mandated by local and federal law.

163.    Furthermore, Mrs. Mwoombola refused to pay Ms. Kunamwene the wages promised in her contract with a conscious and deliberate disregard for the interests of others such that Mrs. Mwoombola's conduct may be called willful or wanton.

164.    At all times relevant hereto, the relationship between Mrs. Mwoombola and Ms. Kunamwene was one of private employer and employee.

165.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

**TENTH CLAIM FOR RELIEF**
**Breach of Contract II**
**(Against Mrs. Mwoombola)**

166.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

167.   Ms. Kunamwene and Mrs. Mwoombola entered into a second employment agreement on or about December 7, 2017, whereby Ms. Kunamwene agreed to work for the Defendants as a domestic worker and Mrs. Mwoombola agreed to pay Ms. Kunamwene $1,750.

168.   After signing the second employment contract, Ms. Kunamwene worked for Mrs. Mwoombola from December 7, 2017 to December 28, 2017.

169.   Mrs. Mwoombola intentionally and willfully failed and refused to pay Ms. Kunamwene the wages promised in her second contract.

170.   Ms. Kunamwene was never given any days off—including weekend days—and was forced to work hours well in excess of a 40-hour workweek.

171.   Mrs. Mwoombola intentionally and willfully failed to pay overtime as mandated by local and federal law.

172.   Furthermore, Mrs. Mwoombola refused to pay Ms. Kunamwene the wages promised in her contract with a conscious and deliberate disregard for the interests of others such that Mrs. Mwoombola's conduct may be called willful or wanton.

173.   At all times relevant hereto, the relationship between Mrs. Mwoombola and Ms. Kunamwene was one of private employer and employee.

174.   Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF
### Negligence
### (Against Both Defendants)

175.   Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

176.   The Defendants owed a duty to Ms. Kunamwene both as an employer and as de facto guardians because she was utterly dependent upon them in the United States.

177.    Unfamiliar with U.S. customs and institutions and with limited English skills, Ms. Kunamwene relied on the Defendants for access to the basics of human life, such as food and shelter.

178.    In addition, because Ms. Kunamwene arrived in the United States on a visa, her immigration status was entirely dependent upon her employers.

179.    The Defendants owed Ms. Kunamwene a duty to provide a safe working environment.

180.    They breached that duty by placing Ms. Kunamwene in a hostile and oppressive work environment.

181.    As a proximate result of the Defendants' conduct, Ms. Kunamwene has suffered damages.

182.    Ms. Kunamwene is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## TWELFTH CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress
### (Against Mrs. Mwoombola)

183.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

184.    The Defendants engaged in negligent conduct toward Ms. Kunamwene, causing her to suffer emotional distress.

185.    The Defendants owed a duty to Ms. Kunamwene both as an employer and as de facto guardians because she was utterly dependent upon them in the United States.

186.    Unfamiliar with U.S. customs and institutions and with limited English skills, Ms. Kunamwene relied on the Defendants for access to the basics of human life, such as food and shelter.

187.    In addition, because Ms. Kunamwene arrived in the United States on a visa, her immigration status was entirely dependent upon her employers.

188.    Defendants breached their duty of care to Ms. Kunamwene by intentionally threatening and demeaning Ms. Kunamwene with the express intention of making Ms. Kunamwene fearful for her job and for her life.

189.    As a proximate result of the Defendants' conduct, Ms. Kunamwene has suffered and will continue to suffer emotional distress.

190.    Ms. Kunamwene is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

### THIRTEENTH CLAIM FOR RELIEF
**Intentional Infliction of Emotional Distress**
**(Against Mrs. Mwoombola)**

191.    Ms. Kunamwene realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

192.    The Defendants intentionally misrepresented to Ms. Kunamwene what her life would be once she moved to the United States.

193.    On a daily basis, Mrs. Mwoombola used her position of power and control over Ms. Kunamwene to force her to continue working for her family for less than minimum wage.

194.    Aware of the fact that Ms. Kunamwene had travelled to the United States to send money to her family and that Mrs. Mwoombola had possession of Ms. Kunamwene's passport, Mrs. Mwoombola mistreated Ms. Kunamwene by way of threats.

195.    Mr. Mwoombola, during his trips to the United States, also used his power over Ms. Kunamwene to inflict emotional distress upon her.

196.    As a proximate result of the Defendants' conduct, Ms. Kunamwene has suffered and will continue to suffer emotional distress.

197.    Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment in its favor and grant the relief sought herein as follows:

1.    Damages in an amount to be determined at trial for each Claim for Relief asserted in the Complaint;

2.    Punitive and exemplary damages in an amount to be determined at trial;

3.    An award of costs, including reasonable attorney's fees, pre- and post- judgment interests as permitted an allowable by law, and Court costs, for Plaintiff against the Defendants; and

4.    Such other further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: June 28, 2019                    By: /s/ Kierstan L. Carlson

Kierstan L. Carlson (DC Bar No. 1005383)
Carlson@blankrome.com
Brooke T. Iley (DC Bar No. 448198)
Iley@blankrome.com
Alan M. Freeman (DC Bar No. 454693)
Freeman@blankrome.com
BLANK ROME LLP
1825 I Street NW
Washington, D.C. 20006
(tel.) 202-420-2200
(fax) 202-420-2201

*Pro Bono Counsel for Kesia N. Kunamwene*